# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

### CIVIL CASE NO. 3:07cv87

| | | |
|---|---|---|
| **MICHAEL H. PARKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM** |
| | ) | **OF** |
| **KRAFT FOODS GLOBAL, INC., KRAFT FOODS** | ) | **DECISION AND** |
| **NORTH AMERICA, INC. SEVERANCE PAY PLAN** | ) | **ORDER** |
| **FOR SALARIED EXEMPT EMPLOYEES; and** | ) | |
| **KRAFT FOODS GLOBAL, INC. ADMINISTRATIVE** | ) | |
| **COMMITTEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for
Summary Judgment [Doc. 64] and the Defendants' Motion to Strike Affidavit
Testimony and Related Exhibits [Doc. 77].

For the reasons stated herein, the Court grants the motion to strike the
Plaintiff's third affidavit as well as the exhibits attached thereto and finds that
summary judgment for the Defendants is appropriate.

1

## PROCEDURAL HISTORY

This case was removed from state court by the Defendants in February 2007 based on federal question jurisdiction. [Doc. 1]. In the Amended Complaint, the Plaintiff asserted the following claims: (1) breach of contract related to severance pay benefits; (2) breach of contract to pay a 2006 bonus; (3) violations of the North Carolina Wage & Hour Act; and (4) violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §1001, *et. seq.* In the ERISA claim, the Plaintiff sought relief pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), which provides, in pertinent part, that a participant in an employee welfare benefit plan covered under ERISA may bring a civil action to recover benefits due under the terms of the plan and/or to enforce his rights under the terms of the plan.

By Order entered September 26, 2008, the Court addressed numerous motions filed by the parties in the initial stages of the litigation. [Doc. 31]. This ruling disposed of motions to dismiss, for summary judgment, and to strike. [Docs. 3, 11, 14, 16, 21 and 22]. The Court made the following rulings: (1) any claims raised by the Plaintiff pertaining to an alleged 1984 severance benefit agreement were dismissed; (2) any state law claims pertaining to any severance benefit agreements were dismissed; (3) any state law claims

pertaining to the Plaintiff's purported entitlement to a bonus for 2006 remained in the action; and (4) the ERISA claim remained in the action. [Doc. 31]. In ruling on the parties' premature cross-motions for summary judgment, the Court noted that the Plaintiff had submitted documents outside the administrative record but had not moved for leave to supplement the record. [Id., at 18]. The Defendants' motion to strike those documents was denied as moot since the case was not yet ripe for summary judgment. [Id.].

On November 4, 2008, the administrative record was filed. [Doc. 39]. The Plaintiff did not object to the record or move for leave to supplement it. By Order entered on May 6, 2009, the Magistrate Judge denied the Defendants' motion for a protective order to preclude discovery of documents concerning the sale or divestiture of the Plaintiff's business unit. [Doc. 54]. The parties engaged in discovery concerning this issue. At no time did the Plaintiff move for leave to supplement the administrative record.

The Defendants, however, did so move in August 2009, seeking to add to the record documents which had been inadvertently omitted. [Doc. 61]. Among those documents were two letters sent to the Plaintiff's attorney after Plaintiff's claim had been filed and handwritten notes by individuals involved in the review process. [Id., Doc.63]. The Plaintiff responded to the motion,

arguing that the administrative record "did not include any documentation related to the claimed sale or divestiture that Kraft said caused Plaintiff to be ineligible for severance." [Doc. 67, at 6]. He did not move to supplement the record. On September 11, 2009, Magistrate Judge David Keesler allowed the Defendants to amend the administrative record by the inclusion of the documents sought to be added. [Doc. 73]. This Order disposed of any arguments concerning the administrative record. The Plaintiff did not move for reconsideration of the Magistrate Judge's ruling and, as a result, the Plaintiff "may not assign as error a defect in the order not timely objected to." Fed.R.Civ.P. 72(a). Thus, the administrative record upon which this Court must base the ERISA ruling consists of the original administrative record [Doc.39] and the supplement allowed by Judge Keesler. [Doc.63].[1]

The Defendants moved for summary judgment on August 10, 2009. [Doc. 64]. In response, the Plaintiff submitted the third affidavit of Michael H. Parker which had attached thereto certain exhibits. [Doc. 69]. In considering the motion for summary judgment, the Court, by Order entered December 21, 2009, made the following rulings: (1) the Plaintiff's ERISA claim was severed

---

[1]The Court recognizes that the Plaintiff disputes that the Defendants followed appropriate ERISA regulations during the administrative process. That is an issue different from an objection to the contents of the record itself.

from the state law claims; (2) the Defendants' motion for summary judgment as to the Plaintiff's state law claim for breach of contract relating to the 2006 bonus was denied and that claim was set for trial in February 2010; (3) the Defendants' motion for summary judgment as to the Plaintiff's North Carolina Wage & Hour Act claim was granted and that claim was dismissed; and (4) the Defendants' motion to strike the third affidavit of Michael H. Parker was deferred until the trial of the breach of contract claim and the ruling on the ERISA claim.[2]  [Doc. 83].

Before the case was reached for trial on the breach of contract claim, the parties settled that cause of action and filed a stipulation of dismissal thereof.[3] [Doc. 85].  The parties agreed that the sole remaining claim, the ERISA claim, should be resolved by the Court on the pending motion for summary judgment. [Doc. 82, at 4-5].

In response to the motion for summary judgment as to the ERISA claim, the Plaintiff submitted the third affidavit of Michael Parker and exhibits attached thereto. [Doc. 69].  Defendants moved to strike the affidavit and exhibits arguing that they were never submitted during the administrative

---

[2]Other rulings contained within the Order are not pertinent to the remaining claim.

[3]The settlement rendered moot the motion to strike as it related to the breach of contract claim.

review of the Plaintiff's claim and therefore are not part of the administrative record. Before ruling on the motion to strike, it is necessary to determine the appropriate standard of review to be applied to the decision of the plan administrator. Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994) ("[A]lthough it may be appropriate for a court conducting a *de novo* review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conducting a review under ... the abuse of discretion standard.").

## STANDARD OF REVIEW

In [Metropolitan Life Insurance Co. v.] Glenn, [128 S.Ct. 2343, 2348, 171 L.Ed.2d 299 (2008)], the [Supreme] Court held that judicial review of an ERISA plan administrator's decision is "under a *de novo* standard unless the plan provides to the contrary." But when plan language grants the administrator discretionary authority, review is conducted under the familiar abuse-of-discretion standard. [T]he Glenn Court also held that the administrator's conflict of interest did not change the standard of review from the deferential review, normally applied in the review of discretionary decisions, to a *de novo* review, or some other hybrid standard. Indeed, the Court stated more broadly that the conflict of interest should not lead to "special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict." Rather, a conflict of interest becomes just one of the "several different, often case-specific, factors" to be weighed together in determining whether

the administrator abused its discretion.

Carden v. Aetna Life Insurance Co., 559 F.3d 256, 260 (4th Cir. 2009) (citations omitted).

The Kraft Foods Global, Inc. Severance Pay Plan for Salaried Exempt Employees (Plan) provides that the Administrator of the Plan is the Kraft Foods Global, Inc. Administrative Committee (Committee).[4] [Doc. 39-3, at 0001]. The expenses of administering the Plan, including the payment of severance benefits, are to be paid by Kraft Foods North America, Inc.[5] (Company) from its general assets. [Id., at 0008]. The Committee was endowed by the provisions of the Plan with "complete discretionary authority to interpret and construe the provisions of the Plan, and to conclusively determine all questions arising under the Plan, including the power to determine the eligibility of Employees and the rights of Participants and other persons entitled to benefits under the Plan and the amount of their benefits."

---

[4]The Court notes that Kraft Foods Global, Inc. was formerly known as Kraft Foods North America, Inc. [Doc. 39-3, at 0012]. In March 2004 the Plan name was changed to Kraft Foods Global Inc. Severance Pay Plan for Salaried Exempt Employees. [Id.]. The Plaintiff did not name this entity as a defendant; however, no objection was raised. The Plaintiff did properly name as a defendant Kraft Foods Global, Inc. Administrative Committee. [Id.].

[5]Likewise, the name of the Company was also changed to Kraft Foods Global, Inc., an entity which has been named as a defendant.

[Id., at 0008-9].[6] From these Plan provisions, it is clear that the Plan provides for "discretionary authority to determine eligibility for benefits" and, thus, "a deferential standard of review is appropriate." Champion v. Black & Decker (U.S.), Inc., 550 F.3d 353, 358 (4th Cir. 2008), *quoting* Glenn, 128 S.Ct. at 2348; Blackshear v. Reliance Std. Life Ins. Co., 509 F.3d 634, 638 (4th Cir. 2007) (district court makes a *de novo* determination whether the plan documents confer discretionary authority on the administrator; if so, court reviews for abuse of discretion); Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000) ("We will find discretionary authority in the administrator if the plan's language expressly creates discretionary authority.").

The Plaintiff argues that the Committee operates under a conflict of interest because the Company pays the benefits and, thus, a *de novo* standard of review is required. The Defendants concede there is a conflict of interest but note that Glenn makes any such conflict merely a factor to consider regarding a possible abuse of discretion. [Doc. 65, at 11-13, 19]. The Glenn Court held that when an employer serves as both the administrator; that is, the evaluator, and the funder; that is, payor, of the Plan,

_____

[6]A virtually identical provision is contained within the 2005 Summary Plan Description (SPD). [Doc. 39-3, at 0020].

a conflict of interest is present.  <u>Glenn</u>, 238 S.Ct. At 2348-49.

As it now stands after <u>Glenn</u>, a conflict of interest is readily determinable by the dual role of an administrator or other fiduciary, and courts are to apply simply the abuse-of-discretion standard for reviewing discretionary determinations by that administrator, even if the administrator operated under a conflict of interest.   Under that familiar standard, a discretionary determination will be upheld if reasonable.  And any conflict of interest is considered as one factor, among many, in determining the reasonableness of the discretionary determination.  In <u>Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan</u>, 201 F.3d 335 (4th Cir. 2000), [the Fourth Circuit] identified eight nonexclusive factors that a court may consider, including a conflict of interest:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

<u>Champion</u>, 550 F.3d at 359, *quoting* <u>Booth</u>, 201 F.3d at 342-43.

The Court therefore rejects the Plaintiff's argument that a *de novo* review is required and will apply the standard enunciated in <u>Glenn</u>.

## MOTION TO STRIKE

The Plaintiff filed a third affidavit with exhibits to support his opposition to summary judgment. [Doc. 69]. The Defendants object, claiming the affidavit and the exhibits attached to it were not submitted during the administrative review of the Plaintiff's claim and therefore are not part of the administrative record. See, *e.g.*, <u>Sheppard</u>, 32 F.3d 120.

In the affidavit, the Plaintiff makes the following observations: (1) the Company announced in 2005 that 600 salaried positions in information technology were to be eliminated but those employees would be eligible for severance pay; (2) in his experience, employees previously terminated were provided severance benefits; (3) he understood the purpose of the severance benefit package to be employee retention and, in his opinion, the Company so communicated; (4) he believed that the Company wanted the Plaintiff in particular to remain during the transition period; (5) in April 2006, the Company issued a press release announcing the outsourcing of information technology jobs; (6) the Plaintiff was aware that his job was among them; (7) the Company made a filing with the Securities and Exchange Commission (SEC) in which it did not describe this outsourcing as a sale or divestiture; (8) the Company made a quarterly report in 2006 in which it did not divulge the

outsourcing as a sale or divestiture; and (9) despite the outsourcing, the Company continues to employ information technology employees. [Doc. 69]. The Plaintiff identifies the exhibits attached to the affidavit as an October 2005 press release, a March 2007 letter regarding the annual meeting of stockholders and an excerpt from a proxy, an April 2006 press release announcing the outsourcing of information technology to Electronic Data Systems (EDS), a report filed with the SEC concerning the agreement with EDS, and the Company's June 2006 quarterly report.[7] [Docs. 69-1, 69-2, 69-3].

The Plaintiff argues that these submissions show he was repeatedly promised that if his job was outsourced, he would receive severance pay. The Committee, however, denied the Plaintiff's application for severance pay because it found that EDS had given him a job offer to which he never responded. The issue before the Court on this ERISA claim is whether the administrator's decision exercising its discretionary authority to deny severance pay on that basis was reasonable. It is undisputed that this affidavit and the exhibits were not before the Committee. "[A]n assessment of the reasonableness of the administrator's decision must be based on the

---

[7]These exhibits are offered without authentication, except for the Plaintiff's assertion that they are statements of the Defendant.

facts known to it at the time." Sheppard, 32 F.3d at 125. "Thus, although it may be appropriate for a court conducting a *de novo* review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conducting a review under ... the abuse of discretion standard." Id.; Booth, 201 F.3d at 339 n.1 ("The district court properly refused to consider this evidence, however, because it was not before the Administrative Committee when it made its determination.").

In addition, the affidavit is not based on personal knowledge but consists merely of the Plaintiff's conclusions, observations, understandings, inferences and surmises. Federal Rule of Civil Procedure 56(e) provides that an affidavit submitted in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matter stated." As noted above, this evidence is not admissible because it was not before the Committee. Nor has the Plaintiff attempted in any manner to show he was competent to testify to the opinions, observations, speculations and conclusions he has stated. A party cannot "'create a genuine issue of material fact through mere speculation or the building of one inference upon another.'"

Emmitt v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (quotation omitted). Nor are the Plaintiff's beliefs concerning the events in question sufficient to withstand summary judgment. E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 945 (4th Cir. 1992).

In fact, the Plaintiff's third affidavit and the exhibits attached thereto are not relevant to the ERISA claim. It appears this evidence was actually related to the Plaintiff's state law claims which are no longer pending. The Court agrees that the affidavit and the exhibits attached to it may not be considered and therefore the motion to strike will be granted.

## SUMMARY JUDGMENT STANDARD APPLIED TO ERISA CLAIMS

This case is presented to the Court in the procedural posture of a motion for summary judgment, as is often the case in ERISA actions. Bynum v. Cigna Healthcare of North Carolina, Inc., 287 F.3d 305, 311 n.14 (4th Cir. 2002), *abrogated on other grounds* Carden, 559 F.3d 256 (noting that ERISA cases are normally submitted as motions for summary judgment rather than as bench trials).

> Although [the Court considers] summary judgment [motions] in the light most favorable to the non-moving party, [it] must also evaluate a denial of benefits under an abuse of discretion standard when, as here, an ERISA benefit plan vests

discretionary authority to make benefit eligibility determinations with the plan administrator. An administrator's decision "will not be disturbed if it is reasonable," even if [this Court] "would have come to a different conclusion independently." A decision is reasonable when it is the "result of a deliberate principled reasoning process and if it is supported by substantial evidence."

Vaughan v. Celanese Americas Corp., 339 Fed.Appx. 320, 322 (4th Cir. 2009), quoting Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997) and Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997) (other citations omitted).

As previously noted, this reasonableness inquiry is guided by the eight factors set forth in Booth. White v. Eaton Corp. Short Term Disability Plan, 308 Fed.Appx. 713, 716 (4th Cir. 2009). The Committee's decision must also be based on "[s]ubstantial evidence [which] consists of less than a preponderance but more than a scintilla of relevant evidence that 'a reasoning mind would accept as sufficient to support a particular conclusion.'" Whitley v. Hartford Life & Acc. Ins. Co., 262 Fed.Appx. 546, 551 (4th Cir. 2008), quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966), overruled by implication on other grounds Black & Decker Disability Plan v. Nord, 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003); Newport News Shipbuilding and Dry Dock Co. v. Cherry, 326 F.3d 449, 452 (4th Cir. 2003).

The Court will thus review the administrator's decision under the familiar summary judgment procedural scheme pursuant to which

summary judgment shall be awarded "if the [administrative record] show[s] there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  As the Supreme Court has observed, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party.  Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), *certiorari denied* 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact."  Bouchat, 346 F.3d at 522, *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist.  Id.

A party opposing a properly supported motion for summary judgment

"may not rest upon the mere allegations or denial of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine

issue for trial." Furthermore, neither "[u]nsupported speculation," nor evidence that is "merely colorable" or "not significantly probative," will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then, regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law," "summary judgment, if appropriate, shall be entered."

Id. (citations and quotations omitted).

## FINDINGS OF FACT OF THE ADMINISTRATIVE COMMITTEE

The Plan provided that a full-time employee was eligible to participate in the severance pay plan. [Doc. 39-3, at 0003]. It is undisputed that the Plaintiff was eligible to and did participate in the Plan. The purpose of the Plan was to provide severance pay to "eligible Employees" "where the Employee's employment with the Company is terminated through no fault of the Employee."[8] [Id., at 0001]. "Severance pay, when granted under the Plan, is designed to provide the Employee with funds while seeking other employment." [Id.].

A participating employee was "eligible for severance pay" under the Plan if the Company "in its sole discretion" determined that the employee's

_____

[8]The SPD contained the same provision. [Doc. 39-3, at 0016]. The SPD, however, made clear that any discrepancy between it and the Plan would be resolved by resort to the Plan. [Id.].

16

employment "was terminated through no fault of the Employee by" a reduction in work force, permanent shut down of a department or subdivision or job elimination <u>and</u> the employee "timely signs and returns to the Company a valid Release" which released all claims arising out of the employment relationship. [Id., at 0004]. It is undisputed that the Plaintiff never signed any such release. An employee became ineligible for severance pay if the Company determined "in its sole discretion" that the employee's employment was terminated "as a result of a sale of a business or any part thereof, where the Employee was offered employment by the purchaser" or where the employee's "business unit or part thereof was leased, transferred or assigned and the Employee is offered a job with the successor."[9] [Id., at 0005].

The Plan provided that the benefits thereunder were not "subject to assignment or alienation, since they are primarily for the support and maintenance of the Participants." [Id., at 0008]. As a result, payments made under the Plan were not subject to attachment by creditors of or through legal process against the Company. [Id.]. Nonetheless, the Plan also stated that

> [n]othing herein shall be construed as giving to any employee of the Company any right to be retained in the employ of the Company, nor shall it be construed as providing any right to claim any pension or other benefit or allowance after termination of

---

[9]The SPD contained the same provision. [Doc. 39-3, at 0018].

employment with the Company. No employee shall, because of this Plan, become entitled to any offer of relocation, lateral transfer, downgrade with pay protection, or any other term of employment.

[Id., at 0008].

The Committee "ha[d] complete discretionary authority to interpret and construe the terms of the plan and to decide factual and other questions relating to the plan and plan benefits, including, without limitation, eligibility for, entitlement to and payment of benefits."[10] [Id., at 0008-9]. In addition, the Company had the right "to change or end the Plan at any time for any reason."[11] [Id., at 0008].

An employee who was terminated was required to make a written claim for severance pay within 60 days of termination unless a resolution had been earlier reached. [Id., at 0009]. If a request for severance pay was denied, the Committee was required to provide written notice of denial within 90 days after a claim was denied. [Id.]. The notice was required to contain information related to the employee's right to appeal that denial with the Committee and was to set forth

specific reasons for such denial, specific references to pertinent

---

[10]The SPD contained the same provision. [Doc. 39-3, at 0020].

[11]The SPD contained the same provision. [Id., at 0021].

Plan provisions on which the denial is based, a description of any additional material or information necessary for the claimant to perfect his or her request, an explanation of why such material or information is necessary, and an explanation of the Plan's review procedure.

[Id.].

In order to obtain further review, on or before 60 days after receipt of a denial notice, the employee[12] must have filed an appeal of that decision by a written statement which

[r]equest[ed] a review of the claim for severance pay by the [Committee];

[s]et[] forth all of the grounds upon which the appeal [was] based and any facts in support thereof; and

[s]et[] forth any issues or comments which the claimant deem[ed] relevant to the claim.

[Id.].

Under the Plan provisions, the Committee could request additional materials from either the Company or the employee which it deemed "in its sole discretion" to be "necessary or advisable in making" review. [Id., at 0010]. "On the basis of the [Committee's] review, the [Committee] shall make an independent determination of the claimant's eligibility for severance pay under this Plan." [Id.].  If the claim was denied, the Committee was required to

---

[12]As used in this section, "employee" refers to a terminated employee.

provide written notice "setting forth (in a manner calculated to be understood by the claimant) the specific reasons for such denial and specific references to the pertinent Plan provisions on which the Administrator's decision was based." [Id.].

The administrative record contains documents relating to the Plaintiff's termination from the Company. On April 28, 2006, he was invited to attend a meeting the following Tuesday, May 2, 2006, "to learn more about your transition to EDS." [Doc. 39-4, at 0024]. The Plaintiff, whose name appears in the email as a recipient, does not dispute that he received this email. [Doc. 39-7, at 0073].

> In our effort to ensure a smooth transition to EDS, a Town Hall Meeting and Individual Employee Hiring Session have been scheduled for you. All transitioning employees are required to participate in both[.] ... The two-hour EDS Town Hall Meeting will provide you with a high-level overview of EDS' business and its compensation and benefits program. Representatives from EDS will be available during the Town Hall Meeting to share details regarding the overall transition. ... A transition package, which will be mailed to your home address, will include your hiring paperwork and an offer letter. You should plan to review and complete the packet following the Town Hall, and bring your paperwork with you to your Employee Hiring Session.
>
> ...
>
> During the week of May 8, an EDS hiring manager will contact you to schedule a follow-up phone meeting. We want you to know that this hiring discussion is not a job interview, since your job is being transitioned to EDS. The meeting will give you a chance to

discuss your employment terms with an EDS manager and ask questions about the company, the transition process, or any personal issues you wish to raise. This session will help you complete, and then submit, the paperwork required for the transition.

[Doc. 39-4, at 0024-25].

This email contained an attachment titled "Kraft Compensation Treatment for Salaried Employees SG13 & Below Transferring to Kraft's IT Service Provider" (the brochure). [Id., at 0027]. Included in that document was the following information:

This transition is being treated as a sale or divestiture, as the work is transferring to EDS, along with the employees. ... In the U.S., all employees will be transferring, and anyone getting an employment offer from EDS that is comparable in pay and benefits, and which does not require relocation, is not eligible for severance.

[Id., at 0028]. The Plaintiff does not dispute that he received this email and the attachments or that he read them.

The Plaintiff also does not dispute that on May 2, 2006, he received an offer of employment packet from EDS in which EDS extended "an offer to join the EDS Kraft Account."[13] [Doc. 39-8, at 0111]. "If you accept this offer, your employment with Kraft will cease and you will become a transitioned

---

[13]The EDS employment offer package was included in the Plaintiff's appeal of the Committee's denial and therefore is part of the Administrative Record. [Id., at 0073]. In that appeal, the Plaintiff acknowledged receipt thereof. [Id.].

employee of EDS on June 1, 2006." [Id.].  The offer provided the Plaintiff with the same base salary, a one time lump sum bonus to compensate for the difference between Kraft's benefit plan and that of EDS, and the ability to participate in a bonus plan. [Id.].  If the Plaintiff had agreed to remain employed with EDS for one year, he would have received an additional $20,000. [Id., at 0112].  The offer did not require that he relocate. [Id., at 0111-113].

The Plaintiff did not accept the offer to transition and on May 16 told his supervisor that he would not transition. [Doc. 39-5, at 0055].  It is undisputed that he did not sign the release required to receive severance pay.  He was aware that his employment would terminate and acknowledged the same in writing. [Doc. 63-2, at 0236].  His employment with the Company terminated on May 31, 2006. [Doc. 39-6, at 0057].

The Plaintiff made a written claim for severance pay on June 21, 2006 and received a denial on July 24, 2006. [Doc. 39-7, at 0078, 0081].  In the denial, the Committee stated:

> In April of this year, Kraft informed Mr. Parker that his job was being outsourced to EDS, Kraft's IT Service Provider, and that his employment with the Company would end.  The Company's contractual agreement with EDS required that EDS offer employment, comparable in pay and benefits, to all impacted employees.  At the time of the announcement, Kraft invited all

impacted employees, including Mr. Parker, to attend a town hall meeting to discuss their transition to EDS. As part of this meeting, Kraft distributed the enclosed document, "Kraft compensation Treatment for Salaried Employees SG13 & Below Transferring to Kraft's IT Service Provider." Under the question "Am I eligible for severance pay," this document provides: This transition is being treated as a sale or divestiture, as the work is transferring to EDS, along with the employees. ... In the U.S., all employees will be transferring, and anyone getting an employment offer from EDS that is comparable in pay and benefits, and which does not require relocation, is not eligible for severance. Mr. Parker received an employment offer from EDS that did not require relocation, but he did not accept it. His employment with Kraft terminated on May 31, 2006. ... As communicated to employees at the time of the announcement, Kraft determined, in its discretion, that the transitioning of IT services to EDS would be treated as a sale or divestiture since the work was transferring to EDS, along with the employees.

[Id., at 0081-82].

The Plaintiff appealed this denial on August 21, 2006. [Id., at 0073]. In his appeal, the Plaintiff raised the following issues: (1) throughout his 22 year tenure with Kraft, the Plaintiff had been "promised" severance pay which once earned was "not subject to being taken away" by Kraft; (2) during the 60 day period prior to the Plaintiff's termination, approximately 35 other employees were terminated due to a reduction in force and they received severance pay; (3) the Plaintiff did not receive advance notice, as the other employees had,

and did not receive a comparable severance package;[14] (4) the email announcing the meeting and enclosing the document explaining severance pay treatment "was not even directed to Mr. Parker since he was not an employee 'transferring to Kraft's IT service provider;'"[15] (5) the offer was illegal because the Plaintiff was "vested" in his "benefits;" (6) characterizing the transition as a sale or divestiture was illegal; (7) the job offered with EDS was not comparable in function, pay or retirement benefits; and (8) the Plaintiff's job "was eliminated in connection with a permanent reduction in Kraft's work force" and therefore he was entitled to severance benefits. [Id., at 0073-77].

On October 13, 2006, the Committee considered the Plaintiff's appeal. [Doc. 39-15, at 0220]. Handwritten notations on the agenda for the meeting highlighted the fact that the contract between Kraft and EDS provided for a comparable salary, as had been done during previous outsourcing projects. [Doc. 63-2, at 0249]. During the meeting, the Committee made the following

---

[14]In contrast to counsel's statement in this appeal, counsel and the Plaintiff have acknowledged that the Plaintiff was aware of the planned transition as early as October 2005. [Doc. 68, at 1-2]. In this claim for severance pay, which is part of the Administrative Record, counsel for the Plaintiff argued that the Plaintiff learned of the transition on April 28, 2006 via email and was unable to attend the meeting the next day because he was out of town. [Doc. 39-7, at 0075]. The record shows beyond dispute that the meeting occurred the following Tuesday. [Doc. 39-4, at 0024].

[15]Despite counsel's comments, the Plaintiff acknowledges receipt of both the email and its attachments. [Doc. 38-7, at 0073-74].

determinations: (1) although the Plaintiff complained that at hiring he had been "promised" severance benefits, eligibility for severance pay was governed by the terms of the Plan at the time the employee terminates; (2) unlike pension and 401(k) benefits, employees do not earn a vested right in severance pay; (3) the Company has the right under the Plan to amend or terminate the Plan at any time; (4) the Plaintiff's situation was different from other recent work force reductions because his job was moved from Kraft to EDS instead of being eliminated; (5) pursuant to the terms of the agreement between Kraft and EDS, EDS was required to offer the Plaintiff a position; (6) in the case of workers whose jobs terminated due to work force reductions, the jobs were eliminated entirely and there was no contractual agreement that these employees would be offered jobs; (7) although the Plaintiff claimed that treating the outsourcing as a sale was inconsistent with the Plan, the Plan provides that the Company "in its sole discretion" may determine whether employment was terminated as a result of a sale of a business; and (8) the Plaintiff was ineligible for severance pay because his business unit was transferred and he was offered a job with the successor. [Doc. 35-16, 0221-222]. Finally, the Committee noted that the Plaintiff

> submitted with his appeal a number of documents, that have been
> provided for the Committee's review, that were intended to show

that the position he was offered by EDS was not comparable to his position at Kraft. While Mr. Parker puts forth a number of facts in support of his argument, these facts are not relevant to the Committee's determination of his eligibility for severance pay. Neither Section 4.4(e) nor Section 4.4(i) of the Plan requires that the offered employment be comparable.

[Id., at 0222]. The Committee recommended that the appeal be denied.

On November 6, 2006, the Plaintiff was notified by the Committee that it was denying his appeal. The Committee advised that

Kraft never promised Mr. Parker that his compensation included severance pay. Eligibility for severance pay is governed by the terms of the Plan as in effect at the time the employee terminates. Unlike pension and 401(k) benefits, employees do not earn a vested right to severance benefits. Also, as stated in Section 6.7 of the Plan, the Company may amend or terminate the Plan at any time.

...

Mr. Parker's termination was treated differently than many recent terminations that occurred due to work force reductions. Mr. Parker was terminated under "Project Source" so that his job moved from Kraft to EDS. As part of the contractual agreement between EDS and Kraft, EDS was required to offer the impacted individuals a position with EDS. In the terminations that occurred as a result of recent work force reductions, the positions of the terminated employees were eliminated entirely. There was no contractual agreement that the individuals would be offered a job with another company.

> ...
>
> The brochure [sent via email regarding severance pay] was not intended to be an amendment to the Plan.  In fact, the disclaimer on the front cover clearly states that "if a discrepancy should arise between this brochure and the official plan documents, the plan documents will govern."
>
> > ...
>
> Under Section 4.4(e) of the Plan, Mr. Parker is not eligible for severance benefits if Kraft, in its sole discretion, determines that his employment terminated as a result of a sale of a business and he was offered employment by the purchaser. ...  Under Project Source Mr. Parker's business unit was transferred to EDS and Mr. Parker was offered a job with such successor.  Thus, under Section 4.4(i) of the Plan, those Kraft employees whose employment terminated as a result of the transferring of IT services to EDS, were ineligible for severance pay if such employees were offered employment by EDS.

[Doc. 39-18, at 0226-227].

The Committee noted that although the Plaintiff claimed that the employment offered by EDS was not comparable, neither section of the Plan upon which the decision was based required that offered employment be comparable. [Id.].

**DISCUSSION**

In reviewing the discretionary determination of the Committee, the Court must consider whether it was reasonable, applying the factors enunciated in Booth. Each of these factors is addressed below.

**The language of the Plan and the purposes and goals thereof.**

The Court first considers the Plan language and its purposes and goals. The Plan clearly stated that its function was to provide funds to terminated employees "while seeking other employment." [Doc. 39-3, at 0001]. The language also defined an "eligible" employee as not including an employee who had been offered another job simultaneously with the sale of his business unit or with the transfer thereof by the successor to Kraft. [Id., at 0005]. Obviously, such an employee would not be "seeking other employment," except by personal choice not to accept the job offer from Kraft's successor.

Another provision of the Plan also made clear that an employee who voluntarily resigned was not entitled to severance pay. [Id., at 0004]. Thus, an employee who chose not to accept the offer with a successor made the decision to voluntarily resign and was not entitled to severance pay.

The language of the Plan does not require that any such job be "comparable" although it appears that the contract between Kraft and EDS did

contain such a requirement. [Id.].  Nor does this portion of the Plan provide that relocation may not be required. [Id.].  In essence, the language of the Plan meant to exclude from eligibility any employee whose job was eliminated by virtue of a sale or transfer of his business unit when he was offered a job with the successor whether or not the job was comparable or required relocation.  Vaughan, 339 Fed.Appx. at 325 (the language of the plan described circumstances where the company would expect an employee to require temporary replacement income because of an involuntary loss of employment).  Although the Plaintiff may not like this language, it was clearly stated and logically related to the goals and purposes of the Plan.  Id.

The Plaintiff relies on the language contained in the brochure sent to employees transitioning to EDS which stated that employees would not be entitled to severance pay as long as relocation was not required and the job offer was comparable.  Such language, however, stemmed from the contract between Kraft and EDS, not the Plan.  Gable v. Sweetheart Cup Co., Inc., 35 F.3d 851, 857 (4th Cir. 1994), *certiorari denied* 514 U.S. 1057, 115 S.Ct. 1442, 131 L.Ed.2d 321 (1995) ("ERISA prohibits informal written ... amendments of employee benefit plans and references to ... benefits contained in nonplan documents cannot override an explicit reservation of the right to modify

contained in the plan documents themselves."); *accord*, <u>Balestracci v. NSTAR</u>

<u>Elec. and Gas Corp</u>., 449 F.3d 224, 232 n.3 (1st Cir. 2006) (brochures cannot

modify plan terms).   Indeed, the brochure clearly stated that any conflict

between its language and that of the Plan would be resolved by the Plan

language which would be controlling.   [Doc. 39-4, at 0027].   <u>Gable</u>, <u>supra</u>.

Likewise, the Plaintiff's argument that the SPD differs from the Plan is

unavailing.   He claims the Plan gave the Company the sole discretion to

determine whether a business unit was being sold or divested whereas the

SPD gave that discretion to the Committee. [Doc. 68, at 16].   According to the

Plaintiff, because there is a discrepancy, the SPD should control.

The Plan does in fact provide that the Company has the sole discretion

to determine whether a sale or divestiture occurs. [Doc. 39-3, at 0004].   The

SPD provision does not include the phrase "in its sole discretion" but merely

characterizes an employee as ineligible for severance pay if his business unit

is sold or divested and he receives a job offer. [Doc. 39-3, at 0018].   Since the

SPD is silent on the issue, the Plan controls and there is no conflict.   <u>Horton</u>

<u>v. Phoenix Fuels, Co., Inc.</u>, 611 F.Supp.2d 977, 992 (D.Ariz. 2009) (if the SPD

is silent on an issue that is described in the Plan, the Plan controls), *citing*

<u>Martin v. Blue Cross & Blue Shield of Va., Inc.</u>, 115 F.3d 1201, 1205 (4th Cir.

1997), *certiorari denied* 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997).

Moreover, contrary to the Plaintiff's argument, the SPD does not provide that the Committee, or Plan Administrator, has the discretion to make that determination. The SPD, like the Plan itself, states that the Plan Administrator "has complete discretionary authority to interpret and construe the terms of the plan and to decide factual and other questions relating to the plan and plan benefits[.]" [Id., at 0020; 0008]. In other words, although the Company may determine whether a business unit has been sold or divested, the Committee is the only entity with discretionary authority to interpret and construe the terms of the plan and to decide the facts related to the plan. There is no conflict between the two. Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 644 (4th Cir. 2007); Sheppard, 32 F.3d at 124 ("The Plan and its summary description, however, both clearly give the Plan and Travelers the exclusive authority ... to interpret the provisions of the plan."). Moreover, the Plaintiff has not alleged, much less shown, that he either relied on or was prejudiced by the purported inconsistency. Aiken v. Policy Management Systems Corp., 13 F3d. 138 (4th Cir. 1993).

The language of the plan must be given its common and ordinary

meaning as a reasonable person in the position of the plan participant would have understood the words, not as the actual participant would have so understood or desired.  Chiles v. Ceridian Corp., 95 F.3d 1505, 1511 (10th Cir. 1996); Booth, 201 F.3d at 340 ("ERISA plans, as contractual documents, are interpreted *de novo* by the courts, which conduct their review 'without deferring to either party's interpretation.'") (citation omitted).  The Court finds that the Committee "reasonably believed the purpose of the Plan was to provide an 'income replacement' benefit and that providing separation pay based on [a decision not to accept a job offer] would create a windfall contrary to the Plan's goals." Vaughn, 339 Fed.Appx. at 325; James v. General Motors Corp., 230 F.3d 315, 317-18 (7th Cir. 2000), *certiorari denied* 532 U.S. 973, 121 S.Ct. 1606, 149 L.Ed.2d 472 (2001) (employee who declined to accept employment with successor resigned and was not entitled to severance pay).

The Plaintiff argues that the Committee artificially contrived the excuse that his business unit had been sold in order to avoid making payment.  He claims that public documents not made part of the Administrative Record show that there was no actual sale of information technology to EDS; instead, he argues, Kraft paid EDS to provide those services, a fact which proves that no sale occurred.  As previously noted, the Court will not consider documents

which are not part of the Administrative Record.  It is also worth noting that the Plaintiff does not cite any case law in support of his position.

"Because 'sale' is undefined in the plan, it must be accorded its plain and ordinary meaning."  Ahuja v. Ericsson, Inc., 277 Fed.Appx. 300, 303 (4th Cir. 2008), *certiorari denied* 129 S.Ct. 575, 172 L.Ed.2d 431 (2008).  It must also be examined in the context in which it is used.  Id.  The Plan provided that severance pay is unavailable to an employee who is terminated "as the result of a sale of a business or any part thereof," when the employee is offered employment with the purchaser.  [Doc. 39-3, at 0005].  The brochure sent to the Plaintiff advised that "[t]his transition is being treated as a sale or divestiture, as the work is transferring to EDS, along with the employees." [Doc. 39-4, at 0028].  Most importantly on this point, however, the Plan itself also provided that severance pay was unavailable if the employee's business unit or part thereof was "transferred" and the employee was offered a job. [Doc. 39-3, at 0005].

The Court finds that, giving the language of the plan its common and ordinary meaning as a reasonable person in the position of the plan participant would have understood, it was clear that Kraft was divesting itself of the business unit where the Plaintiff was employed by transferring the work

to EDS, which would thereafter provide IT services.  Whether this was technically a sale of any portion of Kraft is not the issue; the issue is whether the Administrative Committee was reasonable in its interpretation that the Plaintiff refused the job offer from EDS is reasonable under the facts here presented.  <u>Carden</u>, 559 at 261 (the committee was given the power to construe disputed or doubtful terms in which case its interpretation will not be disturbed if reasonable).  The Committee here had the discretion to determine eligibility for benefits and to interpret the terms of the Plan.

> [The Plaintiff] contends that [his] situation does not fit the plain and ordinary meaning of ["sale"].  And perhaps in some sense it does not.  But neither does it seem that, in the ordinary meaning of the [Plan's] words, []he was terminated.  The terms as they are meant to be applied in the plan documents may not be self-defining in all situations, the one here for instance.  That is precisely why [the Committee's] interpretation that [the Plaintiff refused the job offer] is [reasonable].  "When ... the plan document does not furnish the answer to the question, the answer given by the plan administrator, when the plan vests [it] with discretion to interpret it, will ordinarily bind the court.  That is implicit in the idea of deferential review of the plan administrator's interpretation."

<u>James v. General Motors Corp</u>., 230 F.3d at 317-18 (citations omitted).

The Court therefore finds that the Committee's interpretation of the Plan was a reasonable one and that it was consistent with the stated purpose of the Plan.  <u>Carden</u>, 559 F.3d at 263.  The Court also finds that the Plaintiff's

argument that his unit was not sold and therefore that he did not refuse the job offered is a hyper-technical construction of the Plan designed to result in a windfall to him, a result not contemplated by or provided for in the Plan. Vaughan, 339 Fed.Appx. at 325; Daniel v. Northrop Grumman Space & Mission Systems Corp., 155 Fed.Appx. 427, 430 (11th Cir. 2005).

**The adequacy of the materials considered to make the decision and the degree to which they support it.**

**Whether the decision was consistent with the procedural and substantive requirements of ERISA.**

Instead of addressing these Booth factors, the majority of the Plaintiff's brief relates to his contention that the administrative record was not appropriately compiled by the Defendants. These same arguments were raised and rejected by the Magistrate Judge in connection with the Defendants' motion to amend the Administrative Record. [Doc. 73]. As earlier noted, the Plaintiff did not move for reconsideration of the Magistrate Judge's ruling and, as a result, he "may not assign as error a defect in the order not timely objected to." Fed.R.Civ.P. 72(a); United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007), certiorari denied 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007), citing Wells v. Shriners Hosp., 109 F.3d 198, 199 (4th Cir.

1997) (failure to object or move to reconsider is a waiver of right to appeal the issue).

The Plaintiff admits that the Plan itself prescribed the appropriate procedural mechanism for dealing with a claim, the denial thereof, an appeal therefrom and the final decision on such an appeal. [Doc. 68, at 12]. He also does not dispute that the initial denial letter complied with ERISA regulations. [Id., at 11-13]. He does, however, claim that the Committee failed to provide him with certain documents when he filed an appeal from the initial denial.

Section 2560.503-1(h)(2)(iii) of Title 29 of the Code of Federal Regulations provides in pertinent part that the notice of an adverse claim determination shall "[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."

> A document, record, or other information shall be considered 'relevant' to a claimant's claim if such document, record or other information (i) was relied upon in making the benefit determination; (ii) was submitted, considered, or generated in the course of making the benefit determination ...; [or] (iii) demonstrates compliance with the administrative processes and safeguards required[.]

29 C.F.R. §2560.503-1(m)(8).

In the notice advising the Plaintiff that his claim had been denied, the final paragraph contained a notification that he could "request copies (free of charge) of all documents, records, and other information currently in the possession of the [Committee] that is relevant to your claim." [Doc. 39-7, at 0082]. The Defendants therefore complied with the regulation. Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 237 (4th Cir. 1997).

In response, Plaintiff's counsel sent a five page letter, designated as an appeal. [Id., at 0073-77]. In the final paragraph of that letter, counsel stated, "In the event Mr. Parker's promised and earned benefits are not going to be paid by Kraft immediately," he would then request the documents relied on in making the determination, pertinent Plan documents, the administrative record, documents related to the sale of the Plaintiff's business unit to EDS, the contract between Kraft and EDS, the documents related to the brochure provided to employees transferring to EDS, documents related to payments to employees of Kraft terminated in 2006, personnel records related to the Plaintiff's benefits and compensation, documents related to his job performance for the past two years and documents related to staffing, performance and compensation of the EDS position offered. [Id., at 0076-77].

Immediately after the Plaintiff filed his claim for severance pay, Kraft

sent him a copy of the summary plan description (SPD). [Doc. 63-2, at 0228].

At the time of the initial denial, the Plaintiff was provided a copy of the Plan as well as the "Kraft Compensation Treatment of Salaried Employees SG13 & Below Transferring to Kraft's IT Service Provider" (the brochure). [Doc. 39-6, at 0057]. These were the documents relied on by the Defendants in making the initial benefit determination.

At the time of the Plaintiff's appeal, an administrative record had not yet been compiled because the claim had not been finally determined; thus, no such record could be provided. Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1245 (11th Cir. 2008), *certiorari denied* 129 S.Ct. 646, 172 L.Ed.2d 614 (2008); Metzger v. UNUM Life Ins. Co. of America, 476 F.3d 1161, 1167-68 (10th Cir. 2007); Skipp v. Hartford Life Ins. Co., 2008 WL 346107 **10 (D.Md. 2008). However, the documents relied on for the initial determination consisted of copies of the documents already sent to the Plaintiff and the email exchange which he received concerning the Town Hall Meeting and attachments thereto. The Plaintiff does not dispute that he received the email and attachments. Indeed, he received the brochure attached to the email at the time of the initial denial.

The other documents requested were not "relevant" to the claim; that is,

documents related to the sale to EDS, the contract between Kraft and EDS, documents related to payments to employees of Kraft terminated in 2006, personnel records related to the Plaintiff's benefits and compensation, documents related to his job performance for the past two years and documents related to staffing, performance and compensation of the EDS position offered. As the administrative record discloses, these documents were not relied on by the Committee in making the benefit determination and were not considered or generated in the course thereof. Sgro v. Danone Waters of North America, Inc., 532 F.3d 940, 945 (9th Cir. 2008) (claim activity records and investigation notes relevant); Brooks v. Metropolitan Life Ins. Co., 526 F.Supp.2d 534, 536-37 (D.Md. 2007) (speculative assertion that committee relied on certain document insufficient). Plaintiff does not even allege that the documents sought meet this regulatory standard for production. As a result, Kraft was not obligated to provide such documents.[16]

The Plaintiff also complains that the administrative record does not appear to have been officially maintained. He claims it was compiled by the Defendants' attorneys only in response to this litigation. He further argues that handwritten notes on the Committee's agenda show its members thought

---

[16]The request actually appears to have been an implied threat of litigation since such documents are the type requested through discovery in the course of litigation.

the brochure had been misleading.[17] He also claims that the Committee failed to take an adequate amount of time to consider his claim and appeal. None of these accusations amounts to anything more that speculation. Id. The administrative record shows that the Committee followed the procedural and substantive requirements of ERISA.

The Plaintiff's final argument is that when the Committee issued its decision on his appeal, they added a ground for denial which had not been referenced in the initial denial. In that letter, Kraft cited Section 4.4(e) of the Plan as the basis for denying his claim, noting that "the transitioning of IT services to EDS [was] treated as a sale or divestiture since the work was transferring to EDS, along with the employees." [Doc. 39-7, at 0082]. "Mr. Parker's employment with Kraft terminated as a result of the transitioning of IT services to EDS and he was offered employment by EDS." [Id.]. He thus was not entitled to severance pay. After the Plaintiff appealed, the Committee issued a final decision in which it reiterated that pursuant to Section 4.4(e) he was not entitled to severance pay. [Doc. 39-18, at 0226-27]. The Committee noted "[i]n addition" that Section 4.4(i) also provided that severance pay was not available when an employee's business unit was transferred and a job

_____

[17]Even if this accusation is correct, it is not pertinent since the Plan language controls, not the information contained in the brochure.

offer was extended by the successor. [Id., at 0227]. Based on this additional ground, the Plaintiff claims the Committee failed to follow ERISA procedures.

This is not, however, a situation in which the Committee completely changed its rationale for denial so as to deprive the claimant of his right to an effective appeal. See, *e.g.*, Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230, 235-36 (4th Cir. 2008). In this case, the Committee, in reviewing the appeal, considered the ground upon which denial had been based but also found another rationale for denial. Both grounds rested on the fact that the Committee, in its discretion, considered the transfer of the Plaintiff's business unit and its employees to be a divestiture and the Plaintiff declined a job offer with the successor. Cooper v. Hewlett-Packard Co., 592 F.3d 645, 654 (5th Cir. 2009) ("[A]lthough the [committee] mentioned a new, additional fact that [it] had not considered in the initial denial of [the] claim ..., the mention of that new fact did not constitute different or separate 'specific grounds' for the initial denial of [the] claim.). The ground for denying the claim remains the same and the additional ground provided the Committee with "a concrete affirmation" that its original assessment was correct. Id. Indeed, the Plaintiff acknowledged that the transfer to EDS was outsourcing. [Doc. 68, at 6]. This is not a "completely different" ground but merely an additional argument in

support of the decision.  <u>Gagliano</u>, <u>supra</u>.

> The full and fair review procedural requirements serve two complementary purposes.  They are designed to permit a plan's administrators to resolve disputes in an efficient, streamlined, non-adversarial manner.  At the same time, the procedures ensure that a plan participant is protected from arbitrary or unprincipled decision-making.  Both the specific minimum procedural review requirements ... and the notice requirements of the decision on review ... have been read as ensuring that a full and fair review is conducted by the administrator, that a claimant is enabled to prepare an appeal for further administrative review or recourse to the federal courts, and that the courts can perform the task, entrusted to them by ERISA, of reviewing a claim denial. Compliance that substantially fulfills these goals suffices.

<u>Ellis</u>, 126 F.3d at 236-37 (citations omitted).

The Court finds the materials considered to make the decision were adequate and supported the decision reached.  The Court further finds that the decision was consistent with the procedural and substantive requirements of ERISA.

**Whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan.**

**Whether the decisionmaking process was reasoned and principled.**

As previously noted, the purpose of the severance pay plan was to provide protection to employees who found themselves without a job through no fault of their own.  Thus, where an employee has been offered a job with

a successor to whom the job has been transferred, the Plan purpose would be frustrated if an employee could decide not to take the job but instead to collect severance pay. Although the Plaintiff claims other employees terminated in 2006 received severance pay, the Committee explained that those employees lost their jobs as the result of a reduction in force; that is, their jobs were eliminated rather than transferred. Providing severance pay to an employee whose job has been eliminated furthers the Plan purpose of providing funds while the employee seeks employment. Here, the Plaintiff's job was transferred and by contract with the successor, a job offer was extended to the Plaintiff. Providing severance pay to an employee who has been offered and declined a job does not further the Plan's goal. The Court finds the Committee's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan and that its decision was "the result of a deliberate, principled reasoning process" which is supported by substantial evidence. Ellis, 126 F.3d at 232.

**Any external standard relevant to the exercise of discretion.**

The parties have not identified any such external standard applicable to this case and therefore, no discussion is necessary.

**The fiduciary's motives and any conflict of interest it may have.**

Throughout this litigation, the Plaintiff has claimed that he was "vested" in severance benefits and therefore the Committee's denial of the same is evidence of improper motive. This claim is actually one asserting a breach of contract which claim has previously been dismissed. To the extent that the Plaintiff alleges he is vested in severance benefits pursuant to ERISA, "a plan established by an employer providing for severance pay benefits is an employee welfare benefit plan covered by ERISA. Because a welfare benefit plan is not subject to ERISA's vesting provisions, however, an employer is free to amend the terms of the plan or terminate it entirely." Biggers v. Wittek Industries, Inc., 4 F.3d 291, 295 (4th Cir. 1993). That is, the severance benefit did not vest. Fuller v. FMC Corp., 4 F.3d 255, 258 (4th Cir. 1993), *certiorari denied* 510 U.S. 1115, 114 S.Ct. 1062, 127 L.Ed.2d 382 (1994); Reichelt v. Emhart Corp., 921 F.2d 425, 430 (2nd Cir. 1990), *certiorari denied* 501 U.S. 1231, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991). "Accordingly, an employer selling a [business unit] and terminating the employment of its employees there has no ongoing obligation to pay severance benefits unless such an obligation is provided for under the terms of the then-existing plan." Fuller, 4 F.3d at 258. In this case, the clear and unambiguous terms of the Plan

control; the Plan provided severance pay under specific conditions not met by the Plaintiff when he declined to accept the offer to work for EDS.

The Committee labored under a conflict of interest because Kraft funded the benefit. This conflict is "just one of the 'several different, often case-specific, factors' to be weighed together in determining whether the administrator abused its discretion." <u>Carden</u>, 559 F.3d at 260 (citations omitted). Because the Committee had a financial interest and its decision was in favor of that interest, this factor is weighed against the reasonableness of its decision.

Nonetheless, the Committee's interpretation of the Plan, as related to the Plaintiff, was consistent with the stated purposed of providing replacement income to employees terminated through no fault of their own. <u>Vaughn</u>, 339 Fed.Appx. at 326-27. Thus, although weighed against the Defendants, this factor does not significantly change the balance.

**Weighing the <u>Booth</u> factors.**

The Court finds one <u>Booth</u> factor is neutral: external standards. The Committee's conflict weighs against reasonableness. However, each of the other <u>Booth</u> factors supports the reasonableness of the Committee's decision. Considering all of the relevant factors and weighing them together as

instructed by <u>Glenn</u>, the Court concludes that the Committee did not abuse its discretion.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Strike Affidavit Testimony and Related Exhibits [Doc. 77] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 64] is hereby **GRANTED**.

Judgment is entered simultaneously herewith.

Signed: May 12, 2010

Martin Reidinger
United States District Judge